IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RAE ANDREACCHIO     PLAINTIFF

VS.     CIVIL ACTION NO.: 3:21-cv-386-CWR-LGI

KAREN YAX
a/k/a "The Critical Kay"     DEFENDANT

**COMPLAINT**
**(Jury Trial Demanded)**

COMES NOW, Petitioner RAE ANDREACCHIO, who files this Complaint, by and through the undersigned counsel, as follows:

## I.
## PRELIMINARY STATEMENT

1. Plaintiff, RAE ANDREACCHIO (hereinafter "Plaintiff" or "Mrs. Andreacchio"), is the mother of Christian Andreacchio, deceased, who died under suspicious circumstances on February 26, 2014, in Meridian, Mississippi. Plaintiff has devoted the last seven years trying to bring her son's killers to justice.

2. Defendant KAREN YAX (hereinafter "Defendant" or "Ms. Yax") is prominent social media figure known to her followers as "The Critical Kay." Defendant operates an internet webcast with over 17,000 subscribers in which she discusses numerous real-crime stories from across the United States. One such story involves the suspicious death of the Plaintiff's son. Defendant believes that he committed suicide. Her webcasts expound upon her theories of the case.

3. The Defendant has done more than simply express her opinions about what happened to Christian Andreacchio. On one occasion, the Defendant accused Plaintiff of committing "bribery," "getting people drunk," and "getting young people drunk." On another occasion, the Defendant gave the impression to her audience that Plaintiff, who is a mental health service provider, may have been responsible for the death of her son and another young man. Both sets of comments have defamed or painted Plaintiff in a false light, thereby causing her to suffer injury to her reputation and/or emotional damage. Ergo, she brings this suit against the Defendant.

## II.
## PARTIES

4. Plaintiff is an adult resident citizen of Lauderdale County, Mississippi. She may be served with process in this matter by and through the undersigned attorney, whose current address is PO Box 4814, Mississippi State, MS 39762-4814.

5. Defendant is an adult resident citizen of the State of Michigan, who may be served with process at 2442 Lonesome Dove Trail, Lapeer, MI 48446.

## III.
## SUBJECT MATTER JURISDICTION

6. This Court has subject matter jurisdiction under federal law pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties and because the amount in controversy is greater than $75,000.00, exclusive of interests and costs.

7.	This Court has subject matter jurisdiction over this action under state law. Defendant is not a newspaper, a television station, or a radio station, nor is she a news reporting organization. Moreover, Defendant is being sued for comments that she made during her online editorials, wherein she mixes false and/or misleading statements with her opinions. Thus, no pre-suit notice is required. Cf. Miss. Code Ann. § 95-1-5 (3) ("This section shall not apply to any … editorial or to any regularly published column in which matters of opinions are expressed.")

## IV.
## PERSONAL JURISDICTION

8.	Plaintiff is subject to the general personal jurisdiction of this Court since she is a citizen of Mississippi. Defendant is subject to the specific personal jurisdiction of this Court since her contacts with the State of Mississippi occurred when she committed the tortious actions complained of herein.

9.	A nonresident defendant shall be subject to personal jurisdiction in a federal diversity suit to the extent permitted by the laws of the forum state and the considerations of constitutional due process. Bullion v. Gillespie, 895 F.2d 213, 215 (5th Cir. 1990). The laws of Mississippi permit this suit to be heard here, and Defendant has the requisite minimum contacts with this State.

10.	Since injury is necessarily required to complete a tort, a tort is considered to have been committed in part in Mississippi where the injury results in the state. Rippy v. Crescent Feed Commodities, Inc., 710 F. Supp. 1074, 1077 (S.D. Miss. 1988) (citing Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1168 (5th Cir. 1985)).

Plaintiff suffered injury in this State. Therefore, pursuant to the Mississippi Long Arm Statute (Miss. Code Ann. § 13-3-57), the Defendant is subject to this Court's jurisdiction since she "commit[ted] a tort in whole or in part in this state against a resident … of this state." Thus, the laws of Mississippi permit this suit.

11. During her live webcasts, the Defendant interviewed Mississippi residents over the telephone about the Christian Andreacchio case. She has also conducted in-depth discussions about the official investigation file that was prepared by Mississippi law enforcement personnel. She has also directed messages to the Plaintiff, personally, on her live webcast, such as this one from on or about April 23, 2021:

> You're not ignoring me, Rae. You are very well aware of me, and you know that I have taken up for Dylan and Whitley,[1] and I am a force to be reckoned with. I am a power ball. You never met a mother f---er like me, Rae.

Thus, Mississippi is the focal point of Defendant's discussions. Mississippi is where the Plaintiff suffered harm. Mississippi is also where Defendant directed her comments, such as the one above. Thus, per Calder v. Jones 465 U.S. 783 (1984) and Revell v. Lidov, 317 F.3d 467 (5th Cir. 2002), Defendant has had the requisite minimum contacts with the State of Mississippi to comply with the demands of constitutional due process.

12. Therefore, this Court has jurisdiction over the parties because each party has purposely availed itself of the jurisdiction of the State of Mississippi and traditional notions of fair play would not be violated by this suit.

---

1 Dylan Swearingen and Whitley Goodman, non-parties to this action, were the last people to see Christian Andreacchio alive and were with him when he died.

## V.
## VENUE

13.     The Defendant directed her comments to this judicial district, where Plaintiff lives, and the Plaintiff suffered injury to her reputation and/or emotional damage in this judicial district.  Thus, a substantial part of the events or omissions giving rise to the claim(s) alleged herein occurred in this judicial district.  Therefore, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b).

## VI.
## RELEVANT FACTS

14.     On or about March 21, 2021, Defendant interviewed Dylan Swearingen about the events leading up to the death of Christian Andreacchio.[2]  During that webcast, Defendant made the following statement about the Plaintiff:

> First thing I want to say is if Rae [i.e., the Plaintiff] wants to try this case on social media as she has attempted to do since 2017, I am happy to oblige her.  Right?  I am happy to oblige her, and until now she has really dominated the narrative about this case via intimidation, bullying, outright lies.  And I sort of set the groundwork for that the other night.  And I am going to continue to lay that groundwork and continue to provide proof of the things that I claim that she has attempted to control the narrative via intimidation, bullying, lies, bribery, getting people drunk, getting young people drunk, *et cetera*, *et cetera*, And that is very troubling to me, but she has truly dominated the narrative – her and her family – her brother and her children.  And it's time for the other side to have their say.  It's time for the other side to have someone who takes up the mantle for them.

---

[2] Mr. Swearingen lives in Mississippi.  Upon information and belief, Mr. Swearingen made this call from Mississippi.

15.     Defendant's outrageous allegations about Plaintiff in the above statement are false and defamatory.  Specifically, but without limitation, Plaintiff has not committed bribery, nor has she gotten people drunk – let alone young people.  Plaintiff also denies intimidating and bullying people.

16.     On or about April 11, 2021, Defendant interviewed Dylan Swearingen again, along with Matt Miller.[3]  These are the relevant parts of the colloquy:

> *Defendant*:  Wasn't Hayes [Mitchell] … Wasn't Hayes also treated by Rae?
>
> *Matt Miller*:  I … I don't know that.  I don't … I don't know that.
>
> *Defendant*:  Dylan, Wasn't Hayes … Was Hayes treated by Rae?  Dylan, we know you were.
>
> *Dylan Swearingen*:  I was told… I was told through someone else at some time that may have happened.  I am not 100% sure, so I can't vouch for it.  But I am sure that there is somebody in my group, that if this is true, can vouch for it.
>
> *Matt Miller*: Yep.
>
> *Defendant*:  It seems to me that is something that I have heard.  It seems to me that that is something that I have heard that Hayes Mitchell was also treated by Rae.  And that is what I need people to understand.  There is a whole host of young people here, specifically teenagers and young adults, who have been treated by Rae in this community via her workplace.  They have been treated… They have been treated both counselling-wise and, uh, medically by Rae.  And some of these people who have been treated by her counselling wise and medically have gone on to be accused by her… of being involved in this.  This is how far her reach goes.  Umm.
>
> ***

---

[3] Mr. Miller also lives in Mississippi.  Upon information and belief, these men made this call from Mississippi.

> *Defendant:* I really do believe that Hayes was treated by Rae, and Hayes is now dead with a drug overdose. And he was treated by Rae.
>
> ***
>
> *Defendant:* He was … He's dead also by self-harm. So, she has a son that is dead by self-harm. And she has a patient who is dead by self-harm.

17. Defendant's assertion that Plaintiff's son had died of self-harm is false. Defendant's comments about Hayes Mitchell, when juxtaposed against her false assertion about Christian Andreacchio dying from self-harm, leaves the false impression that Plaintiff had somehow caused – or contributed – to their deaths. Cf. Journal Publ'g Co. v. McCullough, 743 So. 2d 352, 361 (Miss. 1999) (describing how an underlying implication drawn from facially true statements may be sufficient to render the statements false.)

18. Defendant acted with actual malice when she made these comments. She also acted with reckless disregard for the truth in that she knew or should have known that the allegations were false or unable to be proven. Plaintiff has suffered injury as a direct and proximate result of these statements.

## VII.
## CAUSES OF ACTION

*(Count 1 – Defamation)*

19. The preceding paragraphs are incorporated herein by reference as if fully copied in words and figures.

20. Defendant published the above false and defamatory comments that have the capacity to injure Plaintiff's reputation. These communications were not privileged. Defendant acted with actual malice, showing reckless disregard for the truth of the matter.

21. Defendant published defamation that imputes to Plaintiff conduct constituting a criminal offense involving moral turpitude and infamous punishment (e.g., bribery) and by imputing a want of integrity or capacity in the conduct of Plaintiff's trade or business (e.g., imputing responsibility for the death of an alleged patient). Thus, Plaintiff does not have to prove special harm.

22. As a direct and proximate result of the Defendant's defamation, Plaintiff has suffered injury to her reputation and emotional distress. Therefore, Defendant is liable to Plaintiff for defamation.

*(Count 2 – False Light Invasion of Privacy)*

23. Paragraphs 1 - 18 are incorporated herein by reference as if fully copied in words and figures.

24. If the Court finds that the elements of defamation are not met for any of the comments referenced above, Plaintiff alleges in the alternative that Defendant committed the tort of invasion of privacy – false light.

25. Defendant gave publicity to matter(s) concerning Plaintiff that place Plaintiff before the public in a false light that would be highly objectionable to a reasonable person. Defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed.

26. Defendant gave unreasonable and highly objectional publicity to false facts that Plaintiff had committed bribery and had gotten people drunk. Likewise, Defendant gave unreasonable and highly objectional publicity concerning Plaintiff's alleged involvement in the deaths of her son and Hayes Mitchell.

27. As a direct and proximate result of the Defendant's false light invasion of privacy, Plaintiff has suffered injury to her reputation and emotional distress. Therefore, Defendant is liable to Plaintiff for false light invasion of privacy.

## VIII.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiff prays for entry of a judgment against the Defendant for compensatory and punitive damages in the aggregate amount of Ten Million Dollars, plus all costs, attorney's fees, and post-judgment interest, and for general relief.

The Plaintiff demands a jury trial.

Respectfully submitted this the 4th day of June 2021.

RAE ANDREACCHIO

By: _____
Matthew Wilson, MSB No. 102344
Attorney for Plaintiff

Prepared by:
Matthew Wilson (MS Bar #102344)
THE LAW OFFICE OF MATTHEW WILSON, PLLC
Post Office Box 4814, Mississippi State, MS 39762
Telephone: (662) 323-2889 / starkvillelawyer@gmail.com