**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

RAE ANDREACCHIO                                                                    PLAINTIFF

VS.                                        CIVIL ACTION NO.:   3:21-cv-00386-CWR-LGI

KAREN YAX
a/k/a "The Critical Kay"                                                        DEFENDANT

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

---

COMES NOW, the Plaintiff, RAE ANDREACCHIO, by and through counsel, in response to the Defendant's <u>Motion to Dismiss</u> (*i.e.*, her <u>Rule 12 Submission</u>), and files this <u>Memorandum of Law</u>, *to-wit*:

<u>INTRODUCTION</u>

The Complaint [Dkt. 1] focuses on statements the Defendant made on her YouTube webcast when discussing the death of the Plaintiff's son, Christian Andreacchio, who was shot in February 2014.  These statements occurred on or about March 21, 2021, and April 11, 2021.   In these statements, the Defendant claims that Plaintiff committed bribery and other crimes.  The Defendant also implicates the Plaintiff in the death of another person, Hayes Mitchell.

The declaration of Linda Kingsland, which is attached to <u>Plaintiff's Response to the Motion to Dismiss</u>, depict these statements, which are repeated below for the Court's reference:

<u>March 21, 2021</u>

First thing I want to say is...If Rae wants to try this case on social media, as she has been attempting to do since 2017. I'm happy to oblige her! Right? I'm happy to oblige her and until now, she's REALLY dominated the narrative about this case via...intimidation, bullying, outright lies, and I sort of set the groundwork for a lot of that the other night and I'm going to continue to...lay that groundwork and continue to provide proof...of the things that I claim that she has attempted to control the narrative via intimidation, bullying, lies, bribery, getting people drunk,  getting young people drunk, etc., etc... so - and that's very troubling to me...but she has really dominated the narrative... her and her family, her brother, and her children, and it's time for the other side to have their say. It's time for the other side to have someone who takes up the mantle for them.

<u>April 11, 2021</u>

*Defendant*:  Wasn't Hayes... wasn't Hayes, wasn't Hayes also treated by Rae?

*Matt Miller*:  I have, I don't know that—I don't—I don't...

Defendant:  Dylan, wasn't Hayes, was Hayes treated by Rae? Dylan, we know you were.

*Dylan Swearingen*:  I was told...I was told through someone else that sometime that may have happened. I'm not 100% sure, so I can't vouch for it, but I'm sure that there's somebody in my group, that if this is true, they can vouch for it.

*Matt Miller*:  Yeah

*Defendant*:  It seems to me—

*Dylan Swearingen*:  I myself, I—

*Defendant*:  that's something I have heard—

> *Defendant*:  It seems to me that that's something that I heard...that Hayes Mitchell was also treated by Rae. And that's what I need people to understand, there's a whole host of young people here specifically, teenagers and young adults, who have been treated by Rae in this community via her workplace. They've been treated, they've been treated both, uh, counseling-wise, and ah, medically by Rae. And some of these people who have been treated by her counseling-wise, and medically have gone on to be accused by her...of being involved in this... this is how far her reach goes. Um—

> \*\*\*

> *Defendant*:  I really do believe that Hayes was treated by Rae, and Hayes is now dead with a drug overdose and he was treated by Rae. He's dead also by self-harm.   So she has a son that's dead by self-harm and she has a patient that's dead by self-harm.

Furthermore, as the declaration of Ms. Kingsland shows, the Defendant expounded upon her claims elsewhere in her March 21, 2021, webcast.   Although the Complaint does not specify this additional statement, the Plaintiff intends to file a motion for leave to amend the Complaint to include it.   Meanwhile, this additional statement from March 21, 2021, is as follows:

<u>March 21, 2021</u>

> *Defendant*:  Well, yeah, I mean it goes to the... to the... point that the overarching point that I've been trying to make about crossing boundaries, doing very unethical things and I'm going to be pointing out tonight in the show, uh, another person who was BRIBED by Rae, to make... f-false statements, and then I have another girl I'm talking to...Mykala, who was, um... they tried to get a...a guy named, Hunter to get her drunk to get her talki---

> *Dylan Swearingen*: Yeah, Mykala, she's... she's good people, yeah.

*Defendant*:  Yeah, she is. I've been talking to her and...and the bottom line here is none of that would be admissible. So, statements got when a young girl has been gotten drunk or statements that have been purchased... statements that have been bribed none of that's admissible.

\*\*\*

*Defendant*: And I don't know about you but I look at people's patterns and I see that Rae and Todd have a pattern of bribing people with drugs and money. They have a pattern—

*Dylan Swearingen*: They're money people.

*Defendant*: and money.. and they have a pattern of, um, trying to solicit statements out of people via very nefarious means... getting someone drunk, are you kidding me? And... and the, and the problem for them is all of this is very well documented. There's proof of all of it, so there's no way to deny it, right? I mean you, yourself have proof of this.

This Memorandum of Law includes other quotes that are also referenced in Ms. Kingsland's declaration, which shall be presented in context as the argument unfolds.

The Plaintiff and her husband have also submitted declarations denying the allegations made by the Defendant.  These declarations are attached to the Response.

## ARGUMENT

## I.   Standard of Review

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. Lubin v. Delta Airlines, Inc., No. 3:14-cv-648-CWR-FKB, 2015 U.S. Dist. LEXIS 100402 (S.D. Miss. July 31, 2015) (citing Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994), cert. denied, 513 U.S. 930, 115 S. Ct. 322, 130 L. Ed. 2d 282 (1994)).  "The court may determine

the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir. 1997).  If the motion is decided without an evidentiary hearing, the Plaintiff only needs to make a *prima facie* showing that jurisdiction exists and is not required to establish jurisdiction by a preponderance of the evidence.  Luv n' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006).  In such case, the "court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." Id.

A nonresident defendant shall be subject to personal jurisdiction in a federal diversity suit to the extent permitted by the laws of the forum state and the considerations of constitutional due process.  Bullion v. Gillespie, 895 F.2d 213, 215 (5th Cir. 1990).   The federal court sitting in diversity may assert jurisdiction if (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the Fourteenth Amendment to the United States Constitution.  Id. (citing Cycles, Ltd. v. W.J. Digby, Inc., 889 F.2d 612 (5th Cir. 1989)).

Because the requirements of the Mississippi long arm statute and the Due Process Clause have been satisfied, this Court can exercise personal jurisdiction over the Defendant.  See Allred, 117 F.3d at 281.

## II.     The Defendant May Be Sued Pursuant to the Long Arm Statute

Mississippi's long-arm statute states:

> Any nonresident person ... who shall commit a tort in whole or in part in this state against a resident or nonresident of this state ... shall by such act or acts be deemed to be doing

business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57.

Under this statute, any person who has committed, in whole or in part, a tort in this state is subject to jurisdiction of Mississippi courts. As the declarations that are attached to the Plaintiff's response demonstrate, the Defendant committed the tort of defamation, at least in part, against the Plaintiff in Mississippi, even though the Defendant was physically in Michigan.

On her YouTube program (*i.e.*, "Critical Kay"), the Defendant has made videos about the death of Plaintiff's son, the late Christian Andreacchio. Ms. Linda Kingsland declares under penalty of perjury that she recorded various YouTube webcasts of the "Critical Kay" program. Embedded in the declaration is a link to a cloud website where one may access the entire videos. [1] To further aid the Court, a transcript of relevant portions of each of these respective programs is also attached to Ms. Kingsland's declaration.

Thus, from Ms. Kingsland's declaration, one may conclude that the videos accessible by the link in the footnote below are accurate recordings of what the Defendant said about the Plaintiff.

---

1 The account may be accessed by clicking this link:
https://drive.google.com/drive/folders/1cBPFR7o0Qhqd1aC3GzOHlAXqDGLDiS7X.

For the additional convenience of the Court, this link has been shortened to a TinyUrl link, which may be accessed here: https://tinyurl.com/37fm5j4t.

### A. *The Defendant Directed Her Defamation to a Specific Mississippi Resident*

As the transcript of the video entitled "*CK EXCLUSIVE Christian Andreacchio friend Dylan chats with Kay*" shows, the Defendant and Mr. Swearingen had the following exchange at one hour, three minutes, and thirty-three seconds (1:03:32) into the video:

> *Defendant*:  Well, yeah, I mean it goes to the... to the... point that the overarching point that I've been trying to make about crossing boundaries, doing very unethical things and I'm going to be pointing out tonight in the show, uh, another person who was BRIBED by Rae, to make... f-false statements, and then I have another girl I'm talking to...Mykala, who was, um... they tried to get a...a guy named, Hunter to get her drunk to get her talki---
>
> ***
>
> *Defendant*:  Yeah, she is. I've been talking to her and...and the bottom line here is none of that would be admissible. So, statements got when a young girl has been gotten drunk or statements that have been purchased... statements that have been bribed none of that's admissible.
>
> ***
>
> *Defendant*: And I don't know about you but I look at people's patterns and I see that Rae and Todd have a pattern of bribing people with drugs and money. They have a pattern—
>
> ***
>
> *Defendant*: and money.. and they have a pattern of, um, trying to solicit statements out of people via very nefarious means... getting someone drunk, are you kidding me? …

[Transcript of March 21, 2021, interview, *supra.*]

Moreover, as the video would indicate, Mr. Swearingen was being interviewed remotely (via telephonic or electronic means).  That is because he is a Mississippi

resident.  The Plaintiff asserts this in her declaration.  Also, the Court can take judicial notice from the recording that is entitled "*CK EXCLUSIVE Christian Andreacchio friend Dylan chats with Kay*" beginning at one hour, sixteen minutes, and ten seconds (1:16:10) into video that Mr. Swearingen can only find one therapist in Meridian who will treat him, implying that he still lives in the Meridian, Mississippi area:

> <u>*Dylan Swearingen*</u>:  True, I've been... I've been diagnosed with chronic PTSD...but see, the funny part is...here's the crazy part...when I tried to get counseling in Meridian, I had one counselor... like one therapist that I could go see.  Everyone else wouldn't see me because of a conflict of interest due to Rae Andreacchio.

Therefore, Defendant was speaking to a Mississippi resident when she accused the Plaintiff of (1) bribing people to make false statements, (2) of bribing people with drugs and money, and (3) of getting people drunk to solicit statements.

On or about April 11, 2021, the Defendant had another conversation with Dylan Swearingen.  The Defendant also conducted this conversation with Matt Miller.   The relevant excerpt from this conversation may be found in the clip entitled "*John Lordan Danielle Hallan Kendall Rae Shelia Wysocki*" at two hours, forty-six minutes, and thirty-five seconds (2:46:35) into the recording:

> <u>Defendant</u>:  Dylan, wasn't Hayes, was Hayes treated by Rae? Dylan, we know you were.

> \*\*\*

> <u>*Defendant*</u>:   It seems to me that that's something that I heard...that Hayes Mitchell was also treated by Rae. And that's what I need people to understand, there's a whole host of young people here specifically, teenagers and young adults, who have been treated by Rae in this community via

her workplace. They've been treated, they've been treated both, uh, counseling-wise, and ah, medically by Rae. And some of these people who have been treated by her counseling-wise, and medically have gone on to be accused by her...of being involved in this... this is how far her reach goes. Um—

***

*Defendant*:  I really do believe that Hayes was treated by Rae, and Hayes is now dead with a drug overdose and he was treated by Rae. He's dead also by self-harm.   So she has a son that's dead by self-harm and she has a patient that's dead by self-harm.

[Transcript of April 11, 2021, interview, *supra*.]

**B. _The Defendant Committed the Tort of Defamation Per se_**

In Mississippi, the elements of defamation are as follows:

> (1) a false and defamatory statement concerning the plaintiff;

> (2) unprivileged publication to a third party;

> (3) fault amounting to at least negligence on the part of the publisher; and

> (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Phillips Bros., LP v. Winstead, 129 So. 3d 906, 928 (Miss. 2014).  To prove actionability irrespective of special harm (*i.e.*, defamation *per se*), the statements must be:

> (1) Words imputing the guilt or commission of some criminal offense involving moral turpitude and infamous punishment;

> (2) Words imputing the existence of some contagious disease;

(3) Words imputing unfitness in an officer who holds an office of profit or emolument, either in respect of morals or inability to discharge the duties thereof;

(4) Words imputing a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession, trade or business; and …

(5) words imputing to a female a want of chastity.

Id.

Plaintiff will now outline how the Defendant committed the tort of defamation *per se*, element by element.

### *(1)    A False and Defamatory Statement*

The Defendant has accused the Plaintiff of committing bribery and tampering with witnesses.  The Defendant also accused the Plaintiff, by implication, of having had something to do with the death of Hayes Mitchell, an alleged patient of hers.  Cf. Journal Publ'g Co. v. McCullough, 743 So. 2d 352, 361 (Miss. 1999) ("Even if the technical falsity of the statement regarding ownership could be discounted as the defendants suggest, … an underlying implication drawn from facially true statements may be sufficient to render the statements false."); McCullough v. Cook, 679 So. 2d 627, 632 (Miss. 1996) ("We agree with McCullough's claims that though Cook's statement to Scott that the pickup's license tag number, 8ACD0034, was true, the statement's underlying implication that McCullough owned the pickup was false….").

In her declaration, Plaintiff denies Defendant's charges.  She denies bribing people, getting people drunk, or having anything to do with the death of Hayes Mitchell.  So does her husband.  Therefore, the statements are false and defamatory.

### (2) *Unprivileged Publication to a Third Party*

The Defendant directed these defamatory statements to her national audience and specifically to Dylan Swearingen, a Mississippi resident.

Since the Defendant has not asserted any recognized privilege in her Answer that would negate this element, she may not rely upon it as a defense. "[I]f a party fails to raise an affirmative defense in its original answer, the defense will be deemed waived." Hutzel v. City of Jackson, 33 So. 3d 1116, 1119 (Miss. 2010). But even if she could assert any such privilege, it would have been waived when she publicly disseminated her comments over YouTube. Therefore, the publication of this defamation was not privileged.

### (3) *Fault of the Defendant*

Six minutes and forty seconds (6:40) into her episode entitled "*Dismantling Apartment 801 Part 3,*" the Defendant set the following standard for accusing people of criminal behavior:

> You must take into account all the available evidence in a case before making a declarative statement as regards to someone's death or the guilt or innocence of any bystanders.

However, by Defendant's own admission, she had "never met or spoken with the plaintiff on any occasion prior to her statements about the plaintiff that are the subject of this complaint." [Answer, ¶6.] So instead of getting "all available evidence" pertaining to whether the Plaintiff had bribed witnesses, the Defendant made a "declarative statement" regarding Plaintiff's guilt without even asking Plaintiff if this was true. At the very least, this is negligence.

As for the standard of "actual malice," the Plaintiff would have to demonstrate with clear and convincing evidence that the Defendant realized that her statement was false or that she subjectively entertained serious doubt as to the truth of his statement. [2] See Bartimo v. Horsemen's Benevolent & Protective Ass'n, 771 F.2d 894, 898 (5th Cir. 1985).  Although "a failure to investigate is not sufficient in itself to establish reckless disregard," id., actual malice can still be inferred from a publisher's failings as an investigator when the subject is not "hot news."  See id. at 900 ("Where investigation for a story that is not 'hot news' is grossly inadequate in the circumstances, actual malice may be inferred from the publisher's failings as an investigator.") (citing Vandenburg v. Newsweek, Inc., 441 F.2d 378, 380 (5th Cir. 1971).  Moreover, the Supreme Court has held that "evidence of an intent to avoid the truth ... is sufficient to satisfy the more demanding New York Times standard" for actual malice.  Harte-Hanks Commc'ns v. Connaughton, 491 U.S. 657, 693, 109 S. Ct. 2678, 2698-99 (1989).

Thus, circumstantial evidence concerning the Defendant's state of mind becomes relevant.  See id., at 668.  ("[A] plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence …  and it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry.")    From transcripts of the Defendant's programs, the Plaintiff can present circumstantial evidence to demonstrate that the Defendant deliberately chose to avoid the truth, thereby evidencing actual malice.

---

2 Although the standard at trial is proof by clear and convincing evidence, the standard here in this jurisdictional proceeding is merely *prima facie* proof.  See Insta-Mix, Inc., 438 F.3d 465, 469.

At one hour, twenty-one minutes, and nine seconds (1:21:09) into the video entitled "*CK EXCLUSIVE Christian Andreacchio friend Dylan chats with Kay,*" Mr. Swearingen explains that the criminal file regarding Christian Andreacchio's death is 2,700 pages long.  He says that it would be impossible for anyone to explain its contents in an hour.  The Defendant agrees, stating that she spent only two days "digging into it" and that she had not gotten through the "gunshot residue parts." (1:21:34.)   Thus, Defendant had spent only two days reviewing a 2,700-page case file before determining that Plaintiff had bribed witnesses and was culpable in an alleged patient's suicide.

To explain how the Defendant went from complete ignorance about the death of Christian Andreacchio to making scandalous charges about the Plaintiff in only forty-eight hours, a reasonable jury may infer that Defendant was influenced by other motivations.  About the precise nature of these motivations, only discovery will tell.  Suffice it to say, Defendant must have had serious doubts about the allegations.

Defendant bases her assertion that Plaintiff had bribed witnesses on the statement of Jordan Edwards, who claims that she was given "$500 and a jar of some really, really low grade weed" by Plaintiff's husband to lie on a podcast.  Jordan states:

> Hi - um... so, my name is, Jordan. I'm sure the last time you guys heard of me, or from me was from my podcast when I was 16 years old...and that's, and there's just some things I want to say about it, some things that I want to get off my chest and just to really like inform you guys and let you guys know.
>
> Um, so one being everything I said was hearsay...everything was hearsay. I was told at 16 years old that I would receive ten thousand dollars to provide a story to the Andreacchio's when all I received was five hundred

dollars and a jar of some really, really, low-grade weed from Todd Andreacchio and yes, I do have a witness.

*\*\**

and I'm also-- like one thing that I am very aware of that won't leave my mind is how fake I was and how I folded on someone that would never do that to me and someone that I really love you know like what's... like I folded... okay, and I'll carry that on my back for the rest of my life. I will, and so will she...you know.

You guys are all being motivated you're getting caught up in the hearsay just like I did.

Um, you know, you guys want justice for Christian but you're not giving him any because his message hasn't even been heard.

Um, I'm sorry Whitley.

I'm sorry to everyone that I deceived.

[“*CK EXCLUSIVE Christian Andreacchio friend Dylan chats with Kay*” (at 2:19:00).]

After playing a recording of this statement from Jordan Edwards, Defendant said that she found Jordan to be “sincere in her regret.” (2:22:48.)  However, the Defendant glosses over the fact that Jordan Edwards is now an admitted liar.  Thus, it would have been unreasonable for the Defendant to have believed her given her recantation.  Cf. Turner v. Romanowski, 409 F. App'x 922, 930 (6th Cir. 2011) ("[A] reasonable juror would find it difficult to find [trial witness's recantation] affidavit credible because either he is lying now or he was lying then.").  This is especially true since the Defendant admits that she had never spoken to Plaintiff prior to this webcast.

The saga of Christian Andreacchio is seven years old.  Thus, it is by no means “hot news.”  See Bartimo, 771 F.2d at 898.  Nevertheless, Defendant rushed to get

Jordan Edwards's statement to her national audience without even attempting to vet it with the Andreacchios, who certainly would have known if they had attempted to bribe a witness.  Therefore, by juxtaposing the above with her stated motive to "represent" Whitley and Dylan and to not be "ignored,"[3] a reasonable jury may conclude that the Defendant deliberate avoided the truth, opting instead to base her false accusations on the word of an admitted liar and nothing else.  See Harte-Hanks Commc'ns, 491 U.S. at 668 (describing the role mental state has in an actual malice determinations).  Such behavior would be actual malice, as the Supreme Court describes below:

> Although there was reason to question the informant's veracity, just as there was reason to doubt Thompson's story, the editors did not interview a witness who had the same access to the facts as the informant and did not look at films that revealed what actually happened at the game in question. This evidence of an intent to avoid the truth was not only sufficient to convince the plurality that there had been an extreme departure from professional publishing standards, but it was also sufficient to satisfy the more demanding New York Times standard applied by Chief Justice Warren, Justice Brennan, and Justice White.

Id. at 692-93.

---

3 Examples of Defendant's pleas for attention are as follows:

> … But they can't continue to ignore me.  Because they're saying things that are untrue about these people I am representing.

["*Dismantling Apt. 801, Part 3*" (at 4:13).]

> You're not ignoring me, Rae.  You are very well aware of me, and you know that I have taken up for Dylan and Whitley, and I am a force to be reckoned with.  I am a power ball.  You never met a mother f---er like me, Rae.

["*Why Do I LOVE Plushies!*" (at 3:16:53).]

Moreover, Defendant's implied assertion that Plaintiff was responsible for the death of Hayes Mitchell could not have been supported by any factual predicate. Assuming, *arguendo*, that Plaintiff did treat Hayes Mitchell – which Plaintiff can neither confirm nor deny pursuant to privacy laws – only the Plaintiff (with whom the Defendant had not communicated prior to her statements) and Mr. Mitchell (who is deceased) would have known what had been said between the pair.   Thus, Defendant must have had serious doubts about the implication of her statement since she could not have been privy to any such conversations – if they happened at all.   Thus, a reasonable jury could find that Defendant had acted with reckless disregard for the truth, which is actual malice.  See <u>id.</u>; <u>see</u> <u>also</u> <u>St. Amant v. Thompson</u>, 390 U.S. 727, 731, 88 S. Ct. 1323, 1325 (1968) ("Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.").

Plaintiff believes that the mechanisms of discovery will bring additional light to the credibility of the Defendant's sources as well as her state of mind, further buttressing Plaintiff's claim of actual malice.   In the meantime, Plaintiff respectfully submits that she has made a *prima facie* case for actual malice.

### *(4)      Actionability Without Special Harm*

Defendant imputed to the Plaintiff "guilt or commission of some criminal offense involving moral turpitude and infamous punishment."  <u>Phillips Bros., LP</u>, 129 So. 3d at 928.  Specifically, Defendant has accused the Plaintiff of bribing a witness into making false statements:

> … and I'm going to be pointing out tonight in the show, uh,
> another person who was BRIBED by Rae, to make... f-false
> statements …

[Transcript of March 21, 2021, recording, *supra*]

Under Mississippi law, bribing a witness is a Class 1 felony, which is punishable by incarceration of up to fifteen years in prison and a $5,000 fine.  See Miss. Code Ann. § 97-9-109 (making it a Class 1 felony to attempt to bribe anyone she believes will be called as a witness in any official proceeding); see also § 97-9-129 (3) (setting imprisonment of up to fifteen years and a fine of $5,000.00 as the punishment for a Class 1 felony).  Therefore, by accusing the Plaintiff of committing a felony involving "infamous punishment" of up to fifteen years' incarceration, Defendant fulfilled the fourth element of defamation *per se*.

Defendant also imputed to Plaintiff "a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession, trade or business" by implying that she had had something to do with the death of Hayes Mitchell, whom Defendant claims was one of Plaintiff's patients.  See Phillips Bros., LP, 129 So. 3d at 928.

It has been the established law in Mississippi for more than a century that damages are presumed in case of defamation *per se*, and that the Plaintiff need not prove that she suffered any actual damage at all.  See id.  at 929 ("If the language is actionable *per se*, general damages are presumed to result.") (citing McCrory Corp. v. Istre, 252 Miss. 679, 173 So. 2d 640, 646 (Miss. 1965)); see also Doherty v. L. B. Price Mercantile Co., 132 Miss. 39, 51, 95 So. 790, 790-91 (1923) ("The law presumes damage from the speaking of words which are slanderous *per se*, and it was error to instruct the

jury that no damages could be allowed unless the plaintiff had proven damages by a preponderance of the testimony."); <u>Hubbard et al. v. Rutledge</u>, 52 Miss. 581, 584 (1876) (holding that because a defendant was guilty of "malicious libel," "plaintiffs were entitled to recover such damages as the jury might award, and they, without proof of any actual damages, might find a verdict for an amount sufficient to punish defendant for the wrong done in libeling plaintiffs.").

Thus, by operation of law, Plaintiff was damaged from the very moment Defendant told a Mississippi resident, Dylan Swearingen, that Plaintiff had bribed a witness to a criminal investigation.  Likewise, Plaintiff was damaged from the very moment Defendant implied to Mr. Swearingen that Plaintiff was somehow responsible for the death of Hayes Mitchell, an alleged patient.

Therefore, by committing the tort of defamation *per se* while speaking to a Mississippi resident, the Defendant committed a tort in whole or in part in Mississippi.  Thus, the Defendant triggered the Mississippi long-arm statute.  <u>See</u> § 13-3-57.

## III. <u>The Defendant May Be Sued in this Forum Pursuant to the Due Process Clause of the Fourteenth Amendment</u>

Due process requires that the Defendant must have sufficient contacts with the forum state before she can be summoned to appear and defend against a complaint.  In <u>Guidry v. U.S. Tobacco Co.</u>, 188 F.3d 619, 625 (5th Cir. 1999) (citations omitted), the Fifth Circuit describes the standard for determining whether the Due Process Clause permits bringing a nonresident Defendant into court:

    (1)  Did the defendant have minimum contacts with the forum state—purposely directing its activities toward the forum state or purposely availing itself of the privilege of conducting activities therein?

    (2)  Did the plaintiff's cause of action arise out of or result from the defendant's forum-related contacts?

    (3)  Would the exercise of personal jurisdiction be reasonable and fair?

The Plaintiff respectfully submits that the answer to each question is a resounding "yes," as will be described hereinafter.  Therefore, Due Process would not be offended if the Defendant is brought to this Court to account for her actions.

### A.  *The Defendant Had the Requisite Minimum Contacts with the State, and the Cause of Action Arose out of the Defendant's Forum Related Contacts*

"A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."  Lewis v. Fresne, 252 F.3d 352, 358-59 (5th Cir. 2001).  "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.  The defendant is purposefully availing himself of the privilege of causing a consequence in [the forum state]."  Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 213 (5th Cir. 1999).

> This suit was dismissed by the district court for want of jurisdiction on the basis that due process would be denied by assuming jurisdiction over a nonresident defendant whose sole contact with the forum state was the making of a single defamatory telephone call to a person in that state.  Concluding that, under the facts presented, due process permits invocation of jurisdiction over a nonresident who commits in whole or in part a single tort in a state, we reverse.

Brown v. Flowers Indus., Inc., 688 F.2d 328, 334 (5th Cir. 1982).

As the videos and transcripts that are included in or linked to the various declarations show, the Defendant discussed a Mississippi criminal investigation concerning the death of Plaintiff's son.  During at least two of these videos, Defendant contacted at least one Mississippi resident to make inquiries about this matter.  Moreover, while conversing with a certain Mississippi resident (*i.e.*, Dylan Swearingen) on her YouTube program, the Defendant committed the intentional tort of defamation *per se* as described above.

"When a defendant purposefully avails himself of the benefits and protection of the forum's laws -- by engaging in activity . . . outside the state that bears reasonably foreseeable consequences in the state -- maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice." Mississippi Interstate Express, Inc. v. Transpo, Inc., 681 F.2d 1003, 1007 (5th Cir. 1982) (citation omitted).   Here, the Defendant could have foreseen that her false and defamatory statements would have "reasonably foreseeable consequences" in this State, particularly since she was publishing the defamatory statements to a Mississippi resident while she was transmitting her webcast.  Thus, she has the requisite minimum contacts in this State.

Defendant purposely availed herself to the jurisdiction of the State of Mississippi by committing a tort in this State.  Indeed, this cause of action flows from her contacts with the State of Mississippi.  Thus, the first two prongs of the Guidry analysis are fulfilled.

**B.   _The Exercise of Personal Jurisdiction Would be Reasonable and Fair_**

The Fifth Circuit lists the factors that a Court must consider when determining if it is fair to assert personal jurisdiction over a non-resident defendant.  They are:

> (1) the burden on the nonresident defendant,
>
> (2) the forum state's interests,
>
> (3) the plaintiff's interest in securing relief,
>
> (4) the interest of the interstate judicial system in the efficient administration of justice, and
>
> (5)  the  shared interest of  the  several  states in furthering fundamental social policies.

Insta-Mix, Inc., 438 F.3d 465 at 473.  As set forth below, these factors weigh heavily in the favor of the Plaintiff.

In Brown, 688 F.2d 328, a Mississippi resident was injured when a non-resident defendant made a single defamatory phone call from Indiana to Mississippi.  Id. at 330. The district court had sided with the non-resident defendant, holding that this phone call did not meet the minimum contacts required to bring the suit in Mississippi.  Id. However, the Fifth Circuit reversed the case on appeal.  Id.   The Fifth Circuit reasoned:

> Kralis [a non-resident defendant] initiated the telephone call and allegedly committed an intentional tort.  The injurious effect of the tort, if one was committed, fell in Mississippi, which the defendant could easily have foreseen.  The injury was felt entirely by a Mississippi resident and a Mississippi corporation.  Forcing them to travel to Indiana to litigate would not advance their interest in obtaining convenient and effective relief.  There are only two witnesses likely to be called with regard to the content of the telephone call: one of them, the United States Attorney, resides in Mississippi; the other is, of course, Kralis. All of the witnesses to the effect of the call reside in Mississippi.

Id. at 334.

Here, the Court will find a similar situation.  Like the plaintiffs in Brown, the injury complained of was felt by the Plaintiff, who is a Mississippi resident.  See id. Therefore, like the plaintiffs in Brown, forcing the Plaintiff to travel out of state to prosecute her action would be unfair given that the Defendant had chosen to attack the Plaintiff in Mississippi voluntarily.  See id.  The Plaintiff did not ask for the Defendant to defame her in this State; the Defendant did that completely of her own volition. Therefore, to require the Plaintiff to travel more than 900 miles to seek redress for the unprovoked aggression of the Defendant would unfairly undermine her interest in obtaining a convenient forum to voice her grievance.

The Defendant would lead the Court to believe that she is without the economic means to litigate this case in Michigan, let alone in Mississippi.  She claims that she "is not rich and has two minor children to look after." [Motion, at p. 2.]  She also asserts, "If the case were heard in the State of Michigan, … the defendant would be much better placed to … have access to free local expert legal advice." [Id.]

Despite these cries of poverty, the Defendant has a recent history of expensive travel – even since the initiation of this present action.  On August 12, 2021, the Defendant filed her Motion to Dismiss.  [Dkt. 6.]  Because Defendant is *pro-se*, she mailed the Motion to Dismiss via U.S. Express Priority Mail as evidenced by the envelope attached thereto.  [Dkt. 6-1.]  The postmark from that envelope, which is depicted below, indicates that the same was mailed from Hawaii:



The Plaintiff respectfully submits that if the Defendant can afford to travel more than 4,000 miles from Michigan to Hawaii ***after*** being sued, then she can travel 900 miles from Michigan to Mississippi to attend the occasional court hearing.  As such, the Defendant would suffer no undue burden being sued in Mississippi since (a) she voluntarily injected herself into this forum and (b) she has ample resources to travel.

Moving to another factor, the State of Mississippi has an interest in adjudicating this dispute since the Plaintiff is a resident of this State.  See Davenport v. HansaWorld USA, No. 2:12-CV-233-KS-MTP, 2013 U.S. Dist. LEXIS 137473, at *28 (S.D. Miss. Sep. 25, 2013) ("The Court finds that Mississippi has a substantial interest in the resolution of this suit given Davenport's *prima facie* showing of Mississippi residency.")

The next factor, *i.e.*, evaluating the judicial system's interest in obtaining the most effective resolution of the case, requires the Court to consider the interests of the other

potential jurisdictions.  ITL Int'l, Inc. v. Constenla, S.A., No. 1:10CV467 LG-RHW, 2010 U.S. Dist. LEXIS 117215, at *22 (S.D. Miss. Nov. 2, 2010) (citing Bearry v. Beech Aircraft Corp., 818 F.2d 370, 377 (5th Cir. 1987)).  The Court is to "look at the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." AST Sports Science, Inc. v. CLF Distrib. Ltd., 514 F.3d 1054 (10th Cir. 2008) (citations and quotation marks omitted).

Because this is a defamation case where a Mississippi resident was injured in Mississippi, the law of Mississippi applies.  See Mitchell v. Random House, Inc., 703 F. Supp. 1250, 1251 n.2 (S.D. Miss. 1988); Marcone v. Penthouse International Magazine for Men, 754 F.2d 1072, 1077 (3rd Cir. 1985) (any harm to reputation of defamation plaintiff occurred in his home state; therefore his home state provided applicable rule of law); Hanley v. Tribune Publishing Co., 527 F.2d 68 (9th Cir. 1975) (in defamation cases choice of law factors normally call for application of law of plaintiff's domicile).   This weighs heavily in keeping the case here.

Although the above Insta-Mix, Inc. factors weigh heavily in favor of this Court keeping jurisdiction of this matter in Mississippi, this question can be reduced to one simple fact, to-wit:  The Defendant committed this tort in Mississippi when she spoke false and defamatory statements to a Mississippi resident.  As the Fifth Circuit notes:

> When a nonresident defendant commits a tort within the
> state, or an act outside the state that causes tortious injury
> within the state, that tortious conduct amounts to sufficient
> minimum contacts with the state by the defendant to
> constitutionally permit courts within that state, including

federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses.

Guidry, 188 F.3d at 628.  See also, e.g., Trinity Industries, Inc. v. Myers & Associates, Ltd., 41 F.3d 229, 231 (5th Cir.), cert. denied, 516 U.S. 807 (1995); Bullion, 895 F.2d at 217; D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc., 754 F.2d 542, 547 (5th Cir. 1985); DeMelo v. Toche Marine, Inc., 711 F.2d 1260, 1270-71 (5th Cir. 1983); Brown, 688 F.2d at 333; Simon v. United States, 644 F.2d 490, 499 (5th Cir. 1981); Wilkerson v. Fortuna Corp., 554 F.2d 745, 748 (5th Cir.), cert. denied, 434 U.S. 939, 54 L. Ed. 2d 299, 98 S. Ct. 430 (1977); Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228, 1233-34 (5th Cir. 1973), abrogated on other grounds by U.S. v. Cooper, 135 F.3d 960 (5th Cir. 1998); Elkhart Engineering Corp. v. Dornier Werke, 343 F.2d 861, 866-67 (5th Cir. 1965); Calagaz v. Calhoon, 309 F.2d 248, 256-57 (5th Cir. 1962).

Therefore, the legal authority is clear:  the Defendant, Karen Yax, subjected herself to the personal jurisdiction of the State of Mississippi when she defamed the Plaintiff online while talking with a Mississippi resident.

## IV.     The Defendant Has Failed to Comply with the Court's Rules

Finally, the Plaintiff would note that the Defendant has failed to submit a memorandum brief with her motion, in violation of L.U.Civ.R. 7(b)(4), which states:

> At the time the motion is served, other than motions or applications that may be heard *ex parte* or those involving necessitous or urgent matters, counsel for movant must file a memorandum brief in support of the motion. … Failure to timely submit the required motion documents may result in the denial of the motion.

Therefore, Plaintiff would request that the Court deny the Defendant's <u>Rule 12 Submission</u> not only because it lacks substance (as set forth, *supra*), but also because the Defendant has failed to comply with the Court's briefing requirements.  <u>See</u> <u>Alston v. Prairie Farms Dairy, Inc.</u>, No. 4:18-CV-157-DMB-JMV, 2020 U.S. Dist. LEXIS 226839, at *3 (N.D. Miss. Dec. 3, 2020) ("Failure to file the required memorandum brief alone is sufficient grounds to deny both motions.")

### **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, the Plaintiff prays for entry of an order (1) denying the Defendant's Rule 12 Submission and (2) declaring that this Court has personal jurisdiction over the Defendant.  Plaintiff also prays for general relief.

Respectfully submitted this the <u>23rd</u> day of August 2021.

RAE ANDREACCHIO

/s/Matthew Wilson

By: _____

Matthew Wilson, MSB No. 102344
Attorney for Plaintiff

Prepared by:
Matthew Wilson (MS Bar #102344)
THE LAW OFFICE OF MATTHEW WILSON, PLLC
Post Office Box 4814
Mississippi State, MS 39762
Telephone: (662) 312-5039
starkvillelawyer@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew D. Wilson, do hereby certify that I have served the foregoing <u>Plaintiff's Memorandum of Law In Opposition To Defendant's Rule 12 Motion To Dismiss</u>, upon the following party via U.S. Mail, postage prepaid, and/or email:

Ms. Karen Yax
2442 Lonesome Dove Trail
Lapeer, MI 48466
<u>kaykaydoo2@gmail.com</u>

Respectfully submitted this the <u>23rd</u> day of August 2021.

/s/Matthew Wilson
By: _____
Matthew Wilson