**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

RAE ANDREACCHIO                                            PLAINTIFF

VS.                        CIVIL ACTION NO.:   3:21-cv-00386-CWR-LGI

KAREN YAX                                                  DEFENDANT

---

**REPLY TO DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO RULE 16(F)**

---

COMES NOW the Plaintiff, RAE ANDREACCHIO, by and through the undersigned counsel, in reply to Defendant KAREN YAX's response to Plaintiff's Motion for Sanctions pursuant to Rule 16 (f).  In support thereof, Plaintiff states as follows, to-wit:

**I.      Introduction**

On June 4, 2021, Plaintiff filed suit against the Defendant for defamation. [Dkt 1.]  Defendant filed her Answer on June 24, 2021. [Dkt 2.]  She also filed a motion to dismiss for lack of personal jurisdiction, which was denied.  [Dkt 6, 13.]

Since then, Defendant has been sanctioned for refusing to attend a telephonic case management conference.  [Dkt 17.]  She also refused to attend a settlement conference as ordered by the Court, for which Plaintiff moved for sanctions and a default judgment.  [Dkt 44, 45.]  This memorandum is in reply to the Defendant's Response to said motion.

Although Plaintiff's underlying Rule 16(f) motion deals only with Defendant's contumacious refusal to obey an order of this Court, her meandering response touches upon various other topics.  Plaintiff feels the need to respond to these assertions.

To this end, Plaintiff will first describe how the Complaint states a valid claim pursuant to Rule 8(a) of the Federal Rules of Civil Procedure and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).  This analysis will identify the factual, non-conclusory allegations in the Complaint that support the elements of defamation *per se* and defamation by implication.

Next, the Plaintiff will demonstrate how the Complaint makes a valid *prima facie* case for asserting personal jurisdiction over the Defendant.  Plaintiff will show that most of the factors delineated by <u>Calder v. Jones</u> 465 U.S. 783 (1984) and <u>Revell v. Lidov</u>, 317 F.3d 467 (5th Cir. 2002) point conclusively to a finding of personal jurisdiction.  As for the other factors, Plaintiff will also show that Defendant has had the opportunity to present competent evidence showing that these factors favor her, but that she has failed to do so.

Because the Complaint states a valid claim and because the Court has personal jurisdiction over the Defendant, Plaintiff will show that this Court's order compelling Defendant to come to Mississippi for a settlement conference was lawful and binding. *A fortiori*, because the Defendant willfully refused to obey such a valid order, Plaintiff will show that she should be sanctioned.

Finally, the Plaintiff will show that her actions throughout this proceeding have been proper.  As such, the Defendant's arguments should be no excuse for her contumacious refusal to comply with this Court's order.

Plaintiff incorporates by reference the arguments she makes in her Memorandum of Law in Opposition to Defendant's Motion to Dismiss.  [Dkt 10.]

## II.   <u>The Complaint States Valid Claims</u>

Defendant begins her Response discussing the holding in <u>Twombly</u>, 550 U.S. at 556-59, which analyzes the specificity requirement of Rule 8 (a) in the context of an antitrust claim under the Sherman Act.  "An allegation of parallel conduct," the <u>Twombly</u> Court holds, "is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'"  <u>Id.</u> at 557.  To this end, Plaintiff will show that the Complaint has sufficient factual enhancement.

### A.  <u>The Complaint States a Claim for Defamation</u>

In Mississippi, the elements of defamation are as follows:

(1) a false and defamatory statement concerning the Plaintiff;

(2) unprivileged publication to a third party;

(3) fault amounting to at least negligence on the part of the publisher; and

> (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Phillips Bros., LP v. Winstead, 129 So. 3d 906, 928 (Miss. 2014).

A statement is defamatory if it "tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community." Fulton v. Miss. Publishers Corp., 498 So. 2d 1215, 1217 (Miss. 1986).   To prove actionability irrespective of special harm (*i.e.*, defamation *per se*), the statements must be:

> (1) Words imputing the guilt or commission of some criminal offense involving moral turpitude and infamous punishment;
>
> ***
>
> (4) Words imputing a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession, trade or business; and ...

Phillips Bros., LP, at 928.

First, the Complaint recites statements that Defendant made on YouTube. The Complaint quotes Defendant as she explains how Plaintiff has "attempted to control the narrative" about what happened to her son, Christian Andreacchio:

> … And I am going to continue to lay that groundwork and continue to provide proof of the things that I claim that she has attempted to control the narrative via intimidation, bullying, lies, bribery, getting people drunk, getting young people drunk, et cetera, et cetera, …

Complaint, at ¶ 14.

Plaintiff's averment that Defendant made this statement is factual because a jury could use sensory perception to determine what the Defendant said. *See Ollman v. Evans*, 750 F.2d 970, 978 (D.C. Cir. 1984) ("Clearly, in the former category [*i.e.,* statements of fact] are assertions that describe present or past conditions capable of being known through sense impressions. "). Moreover, because the words are clearly designed to degrade Plaintiff in the view of the public, this statement is patently defamatory. See <u>Fulton</u>, 498 So. 2d at 1217. Likewise, Plaintiff alleges that she "has not committed bribery." Complaint, at ¶ 15. This, too, is a factual averment since a jury – using sense impressions – could hear Plaintiff denying Defendant's claim of bribery or, alternatively, hear a defense witness who supports such a claim. *See Oilman*, 750 F.2d at 978. Thus, the Complaint makes a factual, non-conclusory assertion that the aforesaid statement is false and defamatory. Therefore, the Complaint makes a *prima facie* case in support of the first prong of the <u>Phillips Bros., LP</u> test. <u>See</u> 129 So. 3d at 928 ("false and defamatory statement").

Second, the Complaint alleges, "Defendant operates an internet webcast with over 17,000 subscribers in which she discusses numerous real-crime stories from across the United States." Complaint, at ¶ 2. The Complaint also alleges that during a webcast, Defendant made the statement referenced above. <u>See</u> Complaint, at ¶ 14. Thus, the Complaint makes a factual, non-conclusory allegation that the Defendant published this false and defamatory statement to thousands of people. Since the Complaint alleges malice, <u>see</u> Complaint, at ¶ 18, the Defendant's statement would

not be privileged.  See Smith v. White, 799 So. 2d 83, 86 (Miss. 2001) (holding that qualified privilege does not exist if the matter is made with malice).  Thus, the Complaint makes a *prima facie* case in support of the second prong of the Phillips Bros., LP test.  See 129 So. 3d at 928 ("unprivileged publication to a third party").

Third, the Complaint alleges that the Defendant acted with malice and that she knew or should have known the statements were false.  See Complaint, at ¶¶18, 20.  Pursuant to Rule 9 (b) of the Federal Rules of Civil Procedure, "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Therefore, the Complaint need not describe a precise factual basis for these allegations in the same way that one must do for other elements.  Thus,  Plaintiff has made a sufficient allegation regarding Defendant's fault, thereby fulfilling the third prong of the Phillips Bros., LP test.  See 129 So. 3d at 928 ("fault amounting to at least negligence on the part of the publisher"). [1]

Finally, the Complaint demonstrates actionability irrespective of special harm by showing how the Defendant had accused Plaintiff of a criminal offense involving moral turpitude and infamous punishment.   See Phillips Bros., LP, at 928. Defendant has accused Plaintiff of committing bribery.  "Moral turpitude includes,

---

1 Beyond this, Plaintiff has articulated even more reasons to support the Defendant's fault on pages 11-17 of the Plantiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss  [Dkt 10], which she invites the Court to examine.

but is not limited to, actions which involve … bribery." <u>Mississippi Commission on Judicial Performance v. Gibson</u>, 883 So. 2d 1155, 1158 n.2 (Miss. 2004). "… [A] conviction for bribing a witness to commit perjury shall be punishable by up to five years imprisonment." <u>Ill. Cent. Gulf R.R. Co. v. McLain</u>, 174 So. 3d 1279, 1285 n.2 (Miss. 2015). Thus, Defendant's statement that Plaintiff committed bribery is actionable *per se*. <u>See</u> <u>Phillips Bros., LP,</u> 129 So. 3d at 928.

Therefore, the Complaint alleges a false and defamatory statement (*i.e.*, that Plaintiff committed bribery), that was published to third parties without privilege, by which the Defendant had fault, and that the statement was actionable without proof of special harm (since bribery is a crime of moral turpitude subject to infamous punishment). Therefore, the Complaint states a valid claim for defamation *per se*. <u>See</u> <u>Phillips Bros., LP,</u> at 928.

## B. <u>The Complaint States a Claim for Defamation by Implication</u>

In <u>Journal Publ'g Co. v. McCullough</u>, 743 So. 2d 352, 360-61 (Miss. 1999), the Supreme Court of Mississippi adopted the reasoning of the Ninth Circuit Court of Appeals in <u>Church of Scientology v. Flynn</u>, 744 F.2d 694 (9th Cir. 1984). There, "an attorney for former Church of Scientology members made a speech in which he implied, but did not say, that the Church tried to sabotage his plane." <u>Journal Publ'g Co.</u>, 743 So. 2d at 361. The Ninth Circuit held:

> Although Flynn did not specifically accuse CSC of attempting to cause his death, it would be reasonable to imply a defamatory meaning from his remarks. It is well

> settled that the "arrangement and phrasing of apparently nonlibelous statements" cannot hide the existence of a defamatory meaning.  Kapellas v. Kofman, 1 Cal. 3d 20, 459 P.2d 912, 919-20, 81 Cal. Rptr. 360 (Cal. 1969).  Indeed, the meaning of a statement is often dependent upon its context.  See Mullins v. Brando, 13 Cal. App. 3d 409, 91 Cal. Rptr. 796, 798-99 (Cal. App. 1970).  It would be entirely reasonable for a jury to conclude that Flynn was accusing CSC of attempting to cause his death, rather than merely describing something that had happened to him.  See id.; see also Okun v. Superior Court, 29 Cal. 3d 442, 629 P.2d 1369, 1373, 175 Cal. Rptr. 157 (Cal. 1981) ("[ A] writing's susceptibility to innocent meaning does not in itself preclude a finding that an ordinary reader would understand it in a libelous sense.").  We conclude that CSC's complaint sufficiently alleges the existence of a defamatory meaning.

Church of Scientology, 744 F.2d at 696-97 (citations modified) (footnotes omitted).

In the case at bar, the Complaint alleges that the Defendant said:

> I really do believe that Hayes was treated by Rae, and Hayes is now dead with a drug overdose. And he was treated by Rae. … So, she has a son that is dead by self-harm. And she has a patient who is dead by self-harm."

Complaint, at ¶16.  Plaintiff disputes the assertion that her son, Christian Andreacchio, died of self-harm.  See Complaint at ¶16.  However, even if Defendant's statements about Hayes Mitchell and Christian Andreacchio are correct, the implication of these statements in this context would be defamatory.  That is because in context of these statements, the common denominator between the two men is the Plaintiff, herself.  Ergo, a jury could find that Defendant was implying that Plaintiff was somehow to blame for the alleged self-harm of both men.

The Complaint also states:

> Defendant gave the impression to her audience that Plaintiff, who is a mental health service provider, may have been responsible for the death of her son and another young man.
>
> ***
>
> Defendant's comments about Hayes Mitchell, when juxtaposed against her false assertion about Christian Andreacchio dying from self-harm, leaves the false impression that Plaintiff had somehow caused – or contributed – to their [plural] deaths.

Complaint, at ¶¶3, 17.  Thus, the Complaint alleges that Defendant made a false and defamatory implication to her YouTube audience.  See Phillips Bros., LP, at 928; see also Journal Publ'g Co., 743 So. 2d at 360-61.

Because the Plaintiff alleges malice, which may be averred generally as per Rule 9 (b), no privilege exists for the publication of this false and defamatory implication.  See Smith, 799 So. 2d at 86.  Moreover, the Defendant was at fault for the reasons described above.  Therefore, the second and third prongs of the Phillips Bros., LP, test are met.  See 129 So. 3d at 928.

Finally, because the allegation impugned Plaintiff's capacity as a mental health provider, she does not have to prove special harm.  See id.  ("To prove actionability irrespective of special harm … the statements must be: … Words imputing a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession …").

Thus, Plaintiff made a false and defamatory implication (*i.e.*, that Plaintiff caused or contributed to the deaths of Hayes Mitchell and Christian Andreacchio), that was published to third parties without privilege, with fault, and that the implication was actionable without proof of special harm (since this statement impugns Plaintiff's professional capacity).   Therefore, the Complaint states a valid claim for defamation by implication  See id; see also Journal Publ'g Co., 743 So. 2d at 360-61.

### III.   The Court Has Jurisdiction Over Defendant; Therefore, the Court's Order Is Binding Upon Her

Having established that Plaintiff has stated valid claims pursuant to Rule 8 (a) and Twombly, Plaintiff will now address the question of personal jurisdiction.

When a nonresident Defendant presents a motion to dismiss for lack of personal jurisdiction, it is the Plaintiff's burden to establish that *in personam* jurisdiction exists.   Lubin v. Delta Airlines, Inc., No. 3:14-cv-648-CWR-FKB, 2015 U.S. Dist. LEXIS 100402 (S.D. Miss. July 31, 2015) (citing Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994), cert. denied, 513 U.S. 930, 115 S. Ct. 322, 130 L. Ed. 2d 282 (1994)).   "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir. 1997). If the motion is decided without an evidentiary hearing, the Plaintiff only needs to make a *prima facie* case that jurisdiction exists and is not required to establish

jurisdiction by a preponderance of the evidence.  Luv n' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006).  In such case, the "court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." Id.

By previous Order dated November 19, 2021 [Dkt. 13], this Court denied the Defendant's motion to dismiss for lack of personal jurisdiction.  [Dkt. 6.]   Therein, the Court states, "The defendant reserves her right to renew her motion with appropriate evidence at a later juncture."  Order, at p. 4.  Thus, the Defendant could have presented competent evidence in support of a renewed motion to dismiss for lack of personal jurisdiction.   In fact, she could have asked for an evidentiary hearing. However, she has done neither.

On March 22, 2022, the Defendant filed another motion to dismiss, but she attached no exhibits.  [Dkt 22.]  Then, on July 5, 2022, the Defendant filed a third motion to dismiss, along with other requests for relief, including summary judgment. [Dkt 37.]  This motion had two exhibits; however, neither exhibit bears upon the question of whether this Court has personal jurisdiction over the Defendant.  Also, neither exhibit contains sworn statements.  Thus, Defendant still has not provided any competent evidence that should change the Court's mind concerning personal jurisdiction. Thus, the current finding of the Court *vis-à-vis* personal jurisdiction still stands as it should.   Here is why:

A. **Minimum Contacts**

The Complaint alleges that (1) Defendant interviewed Mississippi residents over the telephone about the death of Plaintiff's son, that (2) she conducted in-depth discussions about the official investigative file that was prepared by Mississippi law enforcement personnel, and that (3) she directed at least one message to the Plaintiff, personally, stating:

> You're not ignoring me, Rae. … I am a force to be reckoned with.   I am a power ball.   You never met a [deleted expletive] like me, Rae.

Complaint, at ¶ 11.  Therefore, unlike the defamatory article referenced in Revell v. Lidov, 317 F.3d 467 (5th Cir. 2002),  the Defendant's comments in the case *sub judice* reference the forum state, itself, and the activities of the Plaintiff in the forum state. See id. at 473.   Moreover, unlike the defamatory article in Revell, Defendant's comments to her YouTube audience contained descriptions of the Plaintiff's forum state activities and drew upon forum state sources.  See id.  Also, Defendant made at least one of these defamatory comments while Mississippi residents were on the phone with her.  Complaint, at ¶ 16.   Thus, Defendant could have foreseen that the injurious effect of her intentional tort would have been felt in Mississippi.  See Brown v. Flowers Indus., Inc., 688 F.2d 328, 334 (5th Cir. 1982).

In short, most of the factors that bear upon the minimum contacts analysis favor the Plaintiff's position.  Any factor that does not favor (or disfavor) Plaintiff's position deals with the number of people in Mississippi (as compared to those from

other states) who comprised Defendant's audience.  Presumably, Defendant would have this information in her position.  However, she has presented no sworn statements or other competent evidence to suggest how much of her audience is comprised of Mississippians.  Instead, all she has presented is unsubstantiated allegations and hearsay.  Therefore, because Defendant has failed to produce competent evidence to support her contentions, Plaintiff suggests that any remaining factor pertaining to minimum contacts must be unfavorable to Defendant.

Ergo, Defendant had sufficient minimum contacts with the State of Mississippi when she made these defamatory statements and implications.

### B. <u>Filing Suit in Mississippi Is Not Unfair to Defendant</u>

The Fifth Circuit lists the factors that a Court must consider when determining if it is fair to assert personal jurisdiction over a non-resident defendant.  They are:

> (1) the burden on the nonresident defendant,
>
> (2) the forum state's interests,
>
> (3) the plaintiff's interest in securing relief,
>
> (4) the interest of the interstate judicial system in the efficient administration of justice, and
>
> (5) the shared interest of the several states in furthering fundamental social policies.

<u>Insta-Mix, Inc.,</u> 438 F.3d 465 at 473.

When the Court ruled that Plaintiff had made a *prima facie* case in support of personal jurisdiction, the Court stated that Defendant could renew her motion later

with evidence to support her position. Thus, Defendant could have presented evidence particularizing the burden she would incur by defending this suit in Mississippi. However, she has not.

For example, Defendant has lamented about her financial state throughout the entire proceeding. Yet, she has provided absolutely no affidavits or documents such as tax returns, bank statements, her Patreon statements (where she gets donations from her viewers), pay stubs, etc., to support this claim. Instead, she has made unsubstantiated claims about her poverty. Beyond this, it is clear from the exhibits to her Response that either she or her husband works for Ford Motor Company and is a member of the United Auto Workers. The Court may take judicial notice of the pay scales/benefits that UAW workers receive from Ford Motor Company by accessing their most recently published collective bargaining agreement, located at https://uaw.org/uaw-auto-bargaining/fordcontract/.

In short, the Court has personal jurisdiction over the Defendant. She has directed her comments to Mississippi. She even defamed Plaintiff while talking to a Mississippi resident, whom she was interviewing. Moreover, Defendant has failed to provide any evidence that would demonstrate anything to the contrary.

### IV.   The Plaintiff Has No Valid Reason for Disobeying the Court's Order; Therefore, Sanctions, Including Default Judgment, Are Warranted.

Because the Complaint is not frivolous, and because the Court has personal jurisdiction over the Defendant, the Court's text-only order compelling her to come to

Mississippi for the settlement conference on October 18, 2022, was enforceable.  Cf. Douglass v. Nippon Yusen Kabushiki Kaisha, 46 F.4th 226, 262 n.20 (5th Cir. 2022) (Elrod, J., dissent) ("[A] court lacking in personal jurisdiction isn't properly authorized and can't issue a lawful judgment...") (internal quotations omitted). Therefore, we may now address the substance of the sanctions motion.

To prove that the Defendant is in civil contempt, Plaintiff has the burden of proving: (1) that a court order is in effect; (2) that the order prescribes or requires certain conduct by the Defendant; and (3) that Defendant has performed an act or failed to perform an act in violation of the court's order.  McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949).

The Court ordered the Defendant to come to the October 18, 2022, in-person settlement conference on pains of being sanctioned.  This order was still in effect on October 18, 2022.  Notwithstanding, Defendant did not appear at this hearing, as noted by this Court's own docket entry from that date.   Therefore, Plaintiff has met her burden of proof.  See id.

Now, the Defendant must assert defenses or mitigating circumstances that might cause the court to withhold the exercise of its contempt power.  Nasco, Inc. v. Calcasieu Television & Radio, Inc., 583 F. Supp. 115, 119 (W.D. La. 1984).  Where a legally sufficient defense is asserted, such as Defendant's present inability to comply with the order, this burden is merely one of production rather than persuasion.  Id. (citing U.S. v. Rylander, 460 U.S. 752 (1983)).   However, where Defendant offers a

mitigating circumstance, such as good faith, the Court may tailor sanctions in light of the circumstances offered.  Id.

In her Response, the Defendant offers purported defenses or mitigating circumstances.  However, Plaintiff submits that none of these should be persuasive.

Defendant states that she had the inability to come due to financial reasons. In her own words, she …

> … does not have the disposable income to arrange continual round trip air fare to travel to a foreign jurisdiction to engage in a 20-minute mediation conference with an undoubtedly hostile and vexatious litigant which will inevitably result in a fruitless outcome.

Response, at p. 3.  However, as stated above, Defendant has offered nothing to support her contention of poverty – even though she had mailed her original motion to dismiss from Hawaii.  [Dkt. 6-1.][2]

Beyond this, Defendant contends that a settlement conference would have been futile since, as she puts it, Plaintiff is "an undoubtably hostile and vexatious litigant."  Response, at p. 3.  However, what Defendant fails to realize is that the requirements of Rule 16 (f) are binding not only upon her but also upon the Plaintiff. In other words, if Defendant had travelled 1,000 miles to Mississippi, incurring great

---

2 Granted, she claims that she went to Hawaii because her mother-in-law paid for this trip. Even so, that would imply that at least one person in her family has the means to subsidize her travel.  Plus, someone in her family makes union wages at Ford Motor Company.  So her poverty is very much in doubt.

expense and trouble in the process, only for the Plaintiff to behave vexatiously, then the Court could have sanctioned the Plaintiff for acting in bad faith – even to the point of dismissing her entire Complaint with prejudice.   <u>Compare</u> Fed. R. of Civ. Proc. 16(f) <u>with</u> Fed. R. of Civ. Proc. 37 (b)(2)(A)(v).

Given the distance that Defendant would have had to travel, the Court naturally would have held the Plaintiff to an exceptionally high standard of cooperation and reasonableness.   If, for example, the Plaintiff had taken her proverbial marbles and gone home without making a reasonable attempt to compromise, Plaintiff would have been severely sanctioned for wasting Defendant's time.   Thus, Plaintiff would have felt more pressure to settle than the Defendant.

Put simply, the settlement conference was the best way for Defendant to walk away from this matter without having a judgment being entered against her. However, by refusing to comply with the Court's order, Defendant missed this golden opportunity to settle this matter.   Sadly, she knows it, too:

> Defendant understands the benefits of attending in-person mediation.   It is an important tool utilized by the Court to conserve resources, to find common ground between two parties and possibly come to a mutual agreed settlement in order to avoid a costly, lengthy trial, in order to save everyone time, money and unnecessary burden to the Civil Court system.

Response, at p. 3.   Nevertheless, she refused to obey the Court's lawful order, and she has presented no valid excuse for not obeying.

## V.   **<u>The Plaintiff Has Acted Properly and in Good Faith</u>**

Defendant makes various other claims, including the following:

> Plaintiff has insinuated on multiple occasions that she will
> drop her frivolous lawsuit against Defendant in exchange
> for what Plaintiff believes beyond any rationality that
> Defendant is in possession of "secret evidence" which would
> serve Plaintiff in the future in pursuing yet another never
> ending criminal lawsuit against Whitley Goodman and
> Dylan Swearingen.  (Please see attached Exhibit B 22-26.)

Response, at p. 4.  Presumably, Defendant thinks this is a valid excuse for disobeying the Court's lawful order.  It is not.

At the outset, Plaintiff objects to Defendant's attempt to introduce evidence of Rule 408 settlement negotiations.  Without waiving this objection,  Plaintiff will state the following:

Defendant declared on YouTube that Plaintiff had committed bribery to advance her narrative about what had happened to her son, Christian Andreacchio.  Defendant also implied that Plaintiff had caused or contributed to the deaths of Christian and another man, Hayes Mitchell.

"Truth is a complete defense to an action for libel.  Furthermore, the plaintiff has the burden of proving falsity."  <u>Knight v. R.S.</u>, 315 So. 3d 549, 552 (Miss. App. 2021) (internal citations and quotations omitted).  Since Defendant asserted truth as an affirmative defense, if this matter goes to trial, Plaintiff would have to prove that she did not commit bribery or contribute to the deaths of either man.

Plaintiff also contends that Defendant acted with reckless disregard for the truth when she made these false and defamatory statements and implications. Because reckless disregard for the truth employs a subjective standard, see Smith v. Wal-Mart Stores, Inc., 980 F.3d 1060, 1063 (5th Cir. 2020), Plaintiff needs to review all communications that Defendant has conducted with anyone associated with the Christian Andreacchio investigation to ascertain whether Defendant had a good faith basis for her false and defamatory statements.

On May 19, 2022, Plaintiff propounded requests for production of documents upon Defendant.  (See Exhibit "A.")  Included therein was the following request:

> **REQUEST NO. 4:** Produce for inspection and copying any and all documents, emails, text messages, social media messages, photographs, video recordings, audio recordings, facsimiles, and other messages that relate in any way to the death of Christian Andreacchio .that you have received from any person
>
> **RESPONSE:**

Despite having received this request, Defendant did not respond with any such information when she provided her responses on or about June 24, 2022.  [Dkt. 34.]

Plaintiff notes that the suggestions raised by her attorney to Defendant in his August 30-31, 2022, emails were made after Plaintiff had propounded her Requests for Production.  Thus, Defendant was already obligated under Rule 34 of the Federal Rules of Civil Procedure to provide this information, if it existed, since it bore directly upon critical elements of the Plaintiff's claims.

Plaintiff could have filed a motion to compel. However, in view of the Defendant's history of obstinately refusing to obey the Court's orders, Defendant likely would have disregarded the Court's order if such motion were granted. After all, she once refused to come to a ***telephonic*** case management conference because she was "scared." More recently, she refused to attend the Court-ordered settlement conference after being specifically ordered. So, in good faith, Plaintiff suggested that Defendant could provide essentially the same information as part of a broader settlement package. Although this information would no longer be needed for trial if a settlement was reached, Plaintiff believed that such information, if it did exist, had value in that it might bring her closer to finding out what happened to her son.

Regardless, Plaintiff had the right to sue Defendant for her malicious, false, and defamatory comments. Defendant publicly taunted a grieving mother whose son had died a most violent death. Then, Defendant lied about Plaintiff's actions. Given the grief that Plaintiff has suffered, Defendant's lies would shock anyone who possessed a conscience. Her actions crossed a line. So, the mere fact that Plaintiff would consider settling for a reduced sum plus access to information that Defendant was already obligated to give her testifies to Plaintiff's character and good faith.

Plaintiff was willing to settle. She was willing to exchange a dismissal with prejudice in exchange for money and other valuable consideration. Defendant, however, has only been playing games. Now, Plaintiff respectfully submits that Defendant should be sanctioned accordingly.

"Entry of a default judgment is an appropriate sanction when the disobedient party has failed to comply with a court order because of willfulness, bad faith, or other fault on its part, as opposed to its inability to comply with the court's order." Tech. Chem. Co. v. IG-LO Prods. Corp., 812 F.2d 222, 224 (5th Cir. 1987); see also Rose v. Neal Spelce Assocs., 765 F.2d 511, 514 (5th Cir. 1985).   Because her disobedience was willful, and because she has demonstrated absolutely no inability to comply, a default judgment should be entered.

## VI.   <u>Conclusion</u>

The Plaintiff's Complaint makes a valid *prima facie* case for defamation *per se* and defamation by implication.   Moreover, Defendant has willingly subjected herself to the personal jurisdiction of the State of Mississippi.   Thus, the Court had the legal authority to order her to come to the settlement conference on October 18, 2022.

Defendant refused to come to the settlement conference.   In her Response, she offers no valid reason.   To the extent that her Response may touch upon her alleged inability to comply with the order, she provides no evidence to that end.

In the closing to her Response, Defendant claims that she did not come to Court because of "economic constraints, lack of access to reasonable legal counsel, and lastly a legitimate fear for her physical safety, mental health and well-being whilst travelling alone to an unknown State …." Response, at p. 4.

In litigation, everyone faces economic constraints.   As for Defendant's "lack of access to reasonable legal counsel," the Mississippi Bar Association has an online

directory listing the names of every attorney in this State; so, she could have found an attorney to represent her.  And regarding any "legitimate fear" for her safety – which, Plaintiff denies – Defendant could have moved the Court for prospective injunctive relief to insure her safety.  Therefore, she has failed to prove inability. Instead, she has demonstrated her own contumacious behavior.

Therefore, the Court is justified in sanctioning her for her contempt of court. Thus, Plaintiff respectfully moves for financial sanctions and a default judgment.


WHEREFORE, PREMISES CONSIDERED, Plaintiff RAE ANDREACCHIO prays that this Honorable Court grant her Motion for Sanctions under Rule 16(f) as well as her Motion for Default Judgment.

The Plaintiff prays for general relief.

Respectfully submitted this the 30th day of October 2022.

RAE ANDREACCHIO

/s/Matthew D. Wilson

By: _____

MATTHEW WILSON (MS# 102344)
The Law Office of Matthew Wilson,
PLLC, PO Box 4814,
Mississippi State, MS 39762
Telephone: 662-312-5039
Email: starkvillelawyer@gmail.com

**CERTIFICATE OF SERVICE**

I, Matthew D. Wilson, do hereby certify that I have served the foregoing response, including all exhibits, upon the following party via email:

> Ms. Karen Yax
> 2442 Lonesome Dove Trail
> Lapeer, MI 48466
> kaykaydoo2@gmail.com

Respectfully submitted this the 30th day of October 2022.

/s/Matthew Wilson

By: _____

Matthew Wilson