**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| **RAE ANDREACCHIO**, | |
| *Plaintiff*, | |
| *v.* | CAUSE NO. 3:21-CV-386-CWR-LGI |
| **KAREN YAX**, | |
| *Defendant*. | |

**ORDER**

This matter is before the Court to determine an appropriate amount of damages on plaintiff Rae Andreacchio's tort claims against defendant Karen Yax.

The factual allegations are set forth in the well-pleaded Complaint and need not be recited at length. *See* Docket No. 57 (Order Granting Default Judgment). They are taken as true for present purposes. *Id.*

The short version is this: on her internet webcast, Yax accused Andreacchio, a health care provider, of committing bribery and contributing to the untimely deaths of Andreacchio's son and one of Andreacchio's patients. Docket No. 1. These statements—false, defamatory, unprivileged, actionable, and highly offensive—meet the standards set forth in Mississippi law for defamation (specifically, slander) and false light invasion of privacy. *See J. Pub. Co. v. McCullough*, 743 So. 2d 352, 359 (Miss. 1999) (defining defamation); *Prescott v. Bay St. Louis Newspapers, Inc.*, 497 So. 2d 77, 79 (Miss. 1986) (defining false light invasion of privacy). Each statement also "was made with actual malice—that is, with knowledge that it

was false or with reckless disregard of whether it was false or not, while entertaining subjective doubt as the truth of the statement." *McCullough*, 743 So. 2d at 359.

The Court held an evidentiary hearing on damages on May 25, 2023. Andreacchio testified under oath about the harm Yax's false statements caused her. She confirmed for jurisdictional purposes the relationship those statements had with the State of Mississippi. Andreacchio then provided, as a point of reference, a decision by Judge Samson awarding $75,000 to a victim of defamation. *See In re Murray*, No. 20-1587-KMS, 2023 WL 310344, at *9 (Bankr. S.D. Miss. Jan. 18, 2023). Yax did not appear at the hearing despite this Court's express invitation. *See* Docket No. 57 at 8.

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire and Marine Ins. Co. v. Convalescent Services, Inc.*, 193 F.3d 340, 342 (5th Cir. 1999).

In Mississippi, "[c]ompensatory damages are such damages as will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury." *Parsons v. Walters*, 297 So. 3d 250, 259 (Miss. 2020) (quotation marks and citations omitted). "Damages for emotional distress alleged in connection with intentional tortious conduct may be recovered, even when the plaintiff has experienced no physical injury. The standard considers whether . . . the defendant's behavior is malicious, intentional, willful, wanton, grossly careless, indifferent[,] or reckless." *Id.* at 258-59 (quotation marks and citations omitted). In those cases, "where mental or emotional stress is a foreseeable result of the conduct of the defendant, a court can assess damages for mental and emotional distress." *Gamble ex rel. Gamble v. Dollar Gen. Corp.*, 852 So. 2d 5, 11

(Miss. 2003) (citations omitted) (affirming jury award of $75,000 in compensatory damages for assault and resulting emotional distress).

Because Yax's statements "imput[ed] the guilt or commission of some criminal offense involving moral turpitude and infamous punishment" and "imput[ed] a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession, trade[,] or business," they were "actionable per se and need no special harm." *Speed v. Scott*, 787 So. 2d 626, 632 (Miss. 2001) (citation omitted). The *Speed* court, for example, noted that being called a "thief" can be actionable per se because the crime is a "significant criminal act[]." *Id.* at 635. It pointed to *Valley Dry Goods Co. v. Buford*, 75 So. 252, 253-54 (Miss. 1917), in which a Mississippi jury awarded a cashier $5,000 for slander after her manager falsely accused her of stealing $100. To place those sums in context, the U.S. Bureau of Labor Statistics says that $5,000 in 1917 has the same buying power as $130,388.46 today; $100 then is equivalent to $2,607.77 now.

In this case, Andreacchio testified about the emotional distress that Yax's statements caused. For a parent to be accused of contributing to their child's death is its own kind of pain. Having that broadcast to thousands of people amplifies that pain. Knowing that tens of thousands of people had watched Yax's false statements, Andreacchio said, "makes you very paranoid. It makes you feel very uncomfortable in public." Tr. at 16.

> You don't know who's listening and who's believing what she's saying, you know, or who knows that what she's saying is crazy. And so . . . you do become very isolated and very -- you don't go out to eat. You don't go do things that you normally did, because you don't really know where everybody stands that's around you.

*Id.* The Court heard testimony about how Yax profited from her false statements. Perhaps the worst part, Andreacchio said, is that Yax offered to share Andreacchio's son's autopsy photos with strangers on the internet, "which caused probably the most upset just knowing that

people had, you know, his pictures where he's naked and he's cut open and all of that." *Id.* at 8.

Andreacchio explained at length the effects Yax's statements had on her life and in her community. After the webcasts, people filed complaints about Andreacchio with the Mississippi Board of Nursing, which opened an investigation and found nothing. People called Andreacchio's employer. They accused her of embezzlement via complaints filed with the Mississippi Secretary of State, which commenced its own investigation and (again) found nothing. For a sense of how baseless these allegations were, listeners even accused Andreacchio of overprescribing opiates, a class of drug that Andreacchio does not prescribe.

The Court finds Andreacchio's testimony compelling. The mental and emotional toll Yax's false statements have taken on Andreacchio was obvious at the hearing. Being accused of bribing witnesses is one thing; being accused of contributing to your child's own death is another altogether. Yax's false statements caused real harm and warrant damages.

The above-cited cases on Mississippi emotional distress awards reveal a range of compensatory damages granted in a range of factual situations. The Court has also reviewed the Mississippi Supreme Court's decision in *Stewart v. Gulf Guar. Life Ins. Co.*, 846 So. 2d 192, 195 (Miss. 2002), which reinstated a jury verdict of $500,000 in compensatory damages for severe emotional distress caused by the denial of an insurance claim.

The calculation of damages cannot be reduced to a mathematical formula. Plaintiffs, like defendants at a criminal sentencing hearing, are individuals and must be treated as such after considering all of the circumstances. *See, e.g.*, *Concepcion v. United States*, 142 S. Ct. 2389, 2399 (2022) ("Indeed, it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a

unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."). For that matter, no sum of money can truly make a harmed person "whole." Finders of fact are nevertheless obliged to determine a dollar amount to approximate that goal. *See Clemons v. United States*, No. 4:10-CV-209-CWR-FKB, 2012 WL 5364737, at *5 (S.D. Miss. Oct. 30, 2012) ("An award of monetary damages is simply the means by which our system of justice seeks to repair some of the loss and harm inflicted upon the victim and the victim's family."). And the relevant cases illustrate ranges from which reasonable damages awards can be discerned.

In this case, the Court believes that the evidence supports an award of compensatory damages between those identified in *Buford* and *Stewart*. It assesses compensatory damages at $325,000.

The next issue is punitive damages. This Court has been mindful of caselaw indicating that Mississippi fact-finders err when they are "influenced" by "egregious, outrageous and obviously intentional nature of [the defendant's] conduct . . . to award compensatory damages that were penal in nature." *Parsons*, 297 So. 3d at 263. "Punitive damages, rather, are the means by which a defendant may be punished for the egregious or outrageous nature of his conduct and deterred from conducting himself in a similar manner in the future." *Id.* They may be awarded only when a plaintiff proves "by clear and convincing evidence that the defendant . . . acted with actual malice, gross negligence which evidences a willful, wanton[,] or reckless disregard for the safety of others, or committed actual fraud." *Gamble*, 852 So. 2d at 15 (quotation marks and citation omitted). They are the exception rather than the rule. *Id.*

The egregious nature of Yax's false statements warrants punitive damages. Yax's outrageous accusation that Andreacchio contributed to her child's death likely meets the definition of "malice," *see Moore v. Carroll County, Miss.*, 960 F. Supp. 1084, 1091 (N.D. Miss. 1997) (collecting cases), but at a minimum warrants punitive damages because it was made "with reckless disregard for the rights of others," *Ross-King-Walker, Inc. v. Henson*, 672 So. 2d 1188, 1192 (Miss. 1996). The Court sets punitive damages at $165,000.

The last issue is attorney's fees. Counsel seeks $11,000 in reasonable attorney's fees, which he calculated by taking his hourly rate and multiplying it by the number of hours he conservatively expended on this case. The Court finds that sum justified by counsel's "evidentiary predicate" and Mississippi law. *Coleman & Coleman Enterprises, Inc. v. Waller Funeral Home*, 106 So. 3d 309, 319 (Miss. 2012) (quotation marks and citation omitted); *see also Tunica Cnty. v. Town of Tunica*, 227 So. 3d 1007, 1029 (Miss. 2017).

For these reasons, a default judgment shall issue this day. It shall be comprised of $325,000 in compensatory damages, $165,000 in punitive damages, and $11,000 in reasonable attorney's fees, with interest to run on the total at the applicable federal rate.

**SO ORDERED**, this the 20th day of July, 2023.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE